186 So. 721

**WORLD'S EXPOSITION SHOWS, Inc., v.**
**B. P. O. ELKS, NO. 148.**

3 Div. 282.

Supreme Court of Alabama.

Jan. 19, 1939.

Rehearing Denied Feb. 16, 1939.

Hill, Hill, Whiting & Rives, of Montgomery, for appellant.

Weil & Stakely, of Montgomery, for appellee.

GARDNER, Justice.

Plaintiff and defendant entered into a written contract for a presentation by defendant at Greenville, Mississippi, of an attraction known as "World's Exposition Shows." Plaintiff was to provide a suitable location, pay all licenses, taxes, newspaper advertising, water, ticket taker, police protection, and the electric light bill, to an amount not exceeding $250. Plaintiff was to receive twenty per cent. of the gross receipts of all shows, rides and so forth, and the flat sum of $10 from the sale of each concession; and defendant was to have "the exclusion of all shows, rides and concessions during the time of this engagement." Both parties agreed to use their "best endeavor to make the said event an artistic and financial success." Other detail matter is unnecessary to note.

The concluding sentence of the contract, which appears under the heading "Remarks," is as follows: "The party of the first part further agrees that the party of the second part shall receive as their share of the gross of shows, rides, front gate and concessions by the end of this engagement a total amounting to not less than one thousand dollars." Correspondence between the parties ensued wherein defendant sought a cancellation of the contract by mutual consent, and gave insufficient reason therefor. This plaintiff declined to do, insisting that a failure to exhibit the show would cause heavy damage to the Lodge, and that defendant's refusal to carry out the contract will result in litigation. The original time for the show was by agreement changed to a later date, and at last defendant declined to have the performance. Hence this suit by plaintiff to recover the $1,000 stipulated in the contract, resulting in a judgment in its favor, from which defendant prosecutes this appeal.

Defendant insists plaintiff could recover only nominal damages, as no evidence was offered to show what it would have cost plaintiff to have complied with its part of the contract; and, of consequence, there was nothing before the court to disclose any loss or damage sustained by the breach: that the suit is one to recover profits, and profits alone, and that sufficient data must be produced in evidence to justify such a recovery,—citing 17 Corpus Juris pages 785 et seq. And, further, that under the ruling of this Court in Central of Georgia Rwy. Co. v. Weaver, 194 Ala. 37, 69 So. 521, any anticipated profits to accrue from the exhibition of defendant's show were purely of a speculative character, and for that reason unrecoverable.

It is, of course, the generally accepted rule that, in an action founded on a contract, the plaintiff, in order to recover

more than nominal damages, must adduce evidence that an actual substantial loss or injury has been sustained. But to this rule there is an important qualification, "unless the contract itself furnishes a guide to the measurement of damages." 17 Corpus Juris 722–3.

Recognizing this general rule parties to contracts often insert stipulations for liquidated damages in event of a breach, and thus agree in advance upon the recoverable damages, which agreement the courts will enforce if made in good faith, and is reasonable under all the facts and circumstances. Mr. Williston in his valuable work on contracts (3 Williston on Contracts [revised ed.] section 779) makes this observation: "But as has been seen, the chief, almost the only, means of determining whether the parties in good faith endeavored to assess the damages is afforded by the amount of damages stipulated for, and the nature of the breach upon which the stipulation was agreed to become operative. This is but saying in other words that the reasonableness or unreasonableness of the stipulation is decisive."

And this Court in Henderson v. Murphree, 109 Ala. 556, 20 So. 45, gave recognition to this thought in reaching the conclusion that, under the contract there involved, and in view of all the facts and circumstances disclosed, the agreement for a forfeiture by one partner of a mercantile firm of his interest in the business, and the very substantial profits which had accrued, was enforceable pursuant to its terms, using the following language [page 47]: "The agreement was fair, on a valuable consideration, so plain that no man in the world can construe it to be doubtful or ambiguous, and on every principle of justice he must abide [by] it. To hold otherwise, would be to set aside the agreement the parties intended to make and did make, and make another for them, which they did not make. This cannot be done. The damages to accrue from plaintiff's violation of his agreement, were not certain. They may have been very great, or very small, or none at all, owing to circumstances. In view of the possible or probable injury he might occasion by its violation, the requirement that he should give up his interest in the partnership and accept the pay stipulated, in that event for his services as a clerk, was not unreasonable or unconscionable, but just and wise to have been made."

Every contract, as has been often stated, implies good faith and fair dealing between the parties. 13 Corpus Juris 540. All parties to this contract when it was executed contemplated its fulfillment and a profitable conclusion to each. And, indeed, they expressly agreed therein to "use their best endeavors to make the * * * event an artistic and financial success."

Nor do we think the stipulation in the contract as to the one thousand dollars is properly to be construed as one for liquidated damages in the event of its breach. The language employed does not justify such a construction, but the principle involved in cases of that character is referred to as lending aid by way of analogy only, and it is the duty of the court to give effect to the intention of the parties.

Defendant ingeniously argues that the provisions of the contract as to this one thousand dollars can only function in the event the contract was in other respects complied with; that, upon completion of the engagement, if it appears that twenty per cent. of the gross receipts do not amount to one thousand dollars, defendant was to pay the difference between that and the amount of these gross receipts; and that as there is no way to ascertain what would have been the gross receipts, there is therefore no way to determine what would have been twenty per cent. of the gross receipts. In brief, the argument is this provision was to protect the plaintiff to a certain degree against payments to be made by it if the shows were operated, but if the shows were not operated, then no payment was to be made.

But we are not in accord with the contention that this suit is one to recover profits. By the contract defendant guaranteed to plaintiff that its share of the gross receipts would amount to one thousand dollars. This much defendant assured plaintiff it would receive. How much more was of course dependent upon many circumstances of a speculative nature, but this sum was guaranteed. Evidently all the parties expected it would reach a sum in excess of this amount. But defendant breached its contract, and there were no exhibitions. Plaintiff was therefore deprived of the opportunity of a profit in the transaction. Whether or not a profit, or how great, was speculative, but, in any event, plaintiff was guaranteed the thousand dollars. The suit is not to recover anticipated profits, but to

recover the guaranteed sum under the contract.

The contract is one in the nature of a joint enterprise, with the greater part of the work and expense to be borne by defendant. The one thousand dollars guaranteed is properly to be considered as a measurement of damages in event of a breach, which otherwise are uncertain and conjectural, as it fixes a minimum sum which plaintiff was to receive and is akin to those contracts fixing a maximum limitation of liability treated in section 718-a, Vol. 3 of Williston on Contracts.

The chief difficulty with defendant lies in the fact that the argument against plaintiff's recovery of this guaranteed amount must rest upon the failure of defendant to perform its contract. Or to state it otherwise, plaintiff must be denied the recovery of the guaranteed one thousand dollars because of defendant's breach of the contract. Such a conclusion runs counter to a well settled principle of law, as stated in 3 Williston on Contracts, section 677, and very generally recognized by the authorities, as follows: "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." The New York court in the recent case of Amies v. Wesnofske, 255 N. Y. 156, 174 N.E. 436, 73 A.L.R. 918, gave full recognition to this well founded principle, and it is applicable here.

Defendant has guaranteed to plaintiff a minimum sum of one thousand dollars, and cannot be heard to say no recovery of this sum can be had because it has breached the contract. Viewed in the light of presumed good faith and fair dealing, it cannot well be said the parties intended that in the event defendant deliberately breached its contract and failed to meet the engagement plaintiff should get nothing. The sum assured plaintiff is fixed by the contract, and our conclusion is that defendant cannot be heard to deny the obligation to pay it for its own failure to perform.

This conclusion is in accord with the ruling of the trial court, and the judgment will accordingly be here affirmed.

Affirmed.

THOMAS, BOULDIN, and FOSTER, JJ., concur.